### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,**<br>    **Plaintiff,**<br><br>        **v.**<br><br>**ABRAHAM TEKLU LEMMA,**<br>    **Defendant.** | **Criminal Action No. 24-573 (JDB)** |

### <u>MEMORANDUM OPINION</u>

This is a dispute in an espionage case about discovery under the Classified Information Procedures Act (CIPA), Pub. L. No. 96-456, 94 Stat. 2025 (1980) (codified as amended at 18 U.S.C. App. §§ 1-16), and Rule 16 of the Federal Rules of Criminal Procedure.  The government has moved ex parte in camera to withhold certain classified information from discovery and Lemma opposes, seeking adversarial briefing on whether the information is properly withheld.

Under CIPA section 4 and Rule 16(d)(1), Lemma is not entitled to adversarial briefing because that would defeat the purpose of the discovery rules.  However, the Court will permit defense counsel to file a brief ex parte describing the proposed defense to aid the Court in evaluating whether the arguably discoverable information would be helpful to the defense and therefore whether the government's assertion of privilege must yield in favor of disclosure.

### <u>Background</u>

"Congress passed CIPA to prevent the problem of 'graymail,' where defendants pressed for the release of classified information to force the government to drop the prosecution."  <u>United States v. Sarkissian</u>, 841 F.2d 959, 965 (9th Cir. 1988) (citation omitted); <u>see also</u> <u>United States v. Abu Ali</u>, 528 F.3d 210, 245 (4th Cir. 2008) (same).  To address that problem, CIPA creates a

pretrial procedure for ruling upon the discoverability, admissibility, and use of classified information.  See Sarkissian, 841 F.2d at 965; United States v. Sterling, 724 F.3d 482, 515 (4th Cir. 2013).

As relevant here, CIPA allows for restrictions on discovery of classified information.  18 U.S.C. App. § 4.  Specifically, "upon a sufficient showing," courts "may authorize" the government to (1) "delete specified items of classified information," (2) "substitute a summary" of such classified information, or (3) "substitute a statement admitting relevant facts that the classified information would tend to prove."  Id.  The government may make requests for such authorization ex parte in camera.  Id.  Classified information is defined as "any information or material that has been determined by the [government] pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." Id. § 1.  More broadly, the Federal Rules of Criminal Procedure allow courts "for good cause" to "deny, restrict, or defer discovery" of information that otherwise must be disclosed, and permit a party to show good cause by an ex parte in camera submission.  Fed. R. Crim. P. 16(d)(1).

Here, the government has filed an ex parte in camera motion under CIPA section 4 and Rule 16(d)(1) to withhold from disclosure certain classified information that is otherwise arguably subject to discovery under Rule 16.  Gov't's First CIPA § 4 and Rule 16(d)(1) Mot., Dkt. 73.  In response, Lemma points out that ex parte proceedings are generally disfavored and that courts retain discretion to reject ex parte submissions under CIPA section 4.  Mem. in Supp. of Mot. for Adversarial CIPA 4 Filings 4-5, Dkt. 74.[1]  Lemma further argues that the government should be required to explain to the defense how national security would be endangered by disclosure and

---

[1] The Court will construe this memorandum in support of a motion for adversarial CIPA section 4 filings as a motion for adversarial CIPA section 4 filings.

contends that the defense is better placed than the Court to evaluate the information's importance but cannot do so if it is withheld.  Id. at 6-10.  In reply, the government emphasizes that circuit courts universally allow ex parte in camera review under CIPA section 4 and disclaims objection to Lemma filing an ex parte in camera brief outlining his defenses to assist the Court with evaluating the relevance and helpfulness to the defense of the withheld information.  Gov't's Resp. to Mot. for Adversarial CIPA 4 Filings 3-6, Dkt. 75 (Gov Resp.).

## Discussion

"CIPA is a procedural statute that does not itself create a privilege against discovery of classified information."  United States v. Mejia, 448 F.3d 436, 455 (D.C. Cir. 2006).  Nevertheless, "the procedures [CIPA] mandates protect a government privilege in classified information."  Id. (quoting United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989)).  To determine whether classified information is properly withheld under CIPA section 4, courts consider sequentially (1) whether the information is otherwise discoverable under the applicable Rule 16 provision, (2) whether the government's privilege assertion is "colorable," and (3) whether the information is "at least helpful to the defense of the accused."  See id. at 455-56 (citation modified).[2]  The government bears the burden at step two and the defendant bears it at steps one and three.  The Court has discretion to issue a protective order or not, provided that it applies the Yunis factors. Id. at 456.

---

[2] As to step one, the D.C. Circuit in Yunis stated the test as "relevance," but there it only had occasion to deal with then-Rule 16(a)(1)(A)—now the substantially similar Rule 16(a)(1)(B)(i)—which required the government to disclose "any relevant written or recorded statements made by the defendant."  867 F.2d at 621 (emphasis added). Other discovery provisions involve different tests.  See, e.g., United States v. Alahmedalabdaloklah, 94 F.4th 782, 811 (9th Cir. 2024) (describing the first step as asking whether the information at issue is "discoverable to the defense (as, for example, evidence 'material to preparing the defense' pursuant to Rule 16(a)(1)(E)(i))" (emphasis added). Notably, the Yunis court preferred the term "helpful to the defense" at step three to avoid confusion with the term "materiality," which is also often confused with "relevance."  867 F.2d at 625.  Mejia restated the Yunis "relevance" test for step one but did not disclose the type of otherwise arguably discoverable information at issue, so the information may again have been a defendant statement subject to a relevance threshold.  This opinion frames the overall test more broadly as discoverability so as not to indicate which type of Rule 16 information is at issue.

At step one, Rules 16(a)(1)(A) and (B) require disclosure of certain "relevant" defendant statements as well as the defendant's recorded grand jury testimony relating to the charged offense. Information is relevant if (a) "it has any tendency to make a fact more or less probable than it would be without the [information]" and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. The relevance test imposes a "low hurdle." Yunis, 867 F.2d at 623. Other discovery rules require disclosure of documents, objects, or reports that are "material to preparing the defense" or that the government "intends to use . . . in its case-in-chief at trial." Fed R. Crim. P. 16(a)(1)(E)(i)-(ii), (F). Information is material to the defense if it relates "to refutation of the government's case in chief." United States v. Rashed, 234 F.3d 1280, 1285 (D.C. Cir. 2000) (citing United States v. Armstrong, 517 U.S. 456, 462-63 (1996)).[3] Here, the government does not suggest that it intends to use the withheld information in its case-in-chief at trial. The remaining discovery rules cover organizational defendants, the defendant's prior criminal record, items obtained from or belonging to the defendant, and expert witness disclosures. Fed. R. Crim. P. 16(a)(1)(C), (D), (E)(iii), (G).

At step three, helpful information includes but is not limited to exculpatory or witness impeachment information that must be disclosed during discovery under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, or witness statements that must later be disclosed under the Jencks Act, 18 U.S.C. § 3500. See Mejia, 448 F.3d at 456-58 & n.20.[4] The helpfulness test "gives the

---

[3] Then-Rule 16(a)(1)(C) is now the substantially similar Rule 16(a)(1)(E).

[4] In addition to being "favorable," Brady information must be "material to guilt or punishment," which means there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 456 n.19 (quoting Strickler v. Greene, 527 U.S. 263, 280 (1999)). For information that is not just helpful but also "essential to a fair determination of a cause," due process "might afford the defendant further relief." Id. at 457 n.20 (quoting Yunis, 867 F.2d at 622 n.9).

Citing Yunis's discussion of United States v. Valenzuela-Bernal, 458 U.S. 858, 874 (1982), the government suggests that step three requires that information be "material[ and] favorable" to the defense. However, Valenzuela-Bernal was a Fifth and Sixth Amendment case that relied on Brady as well as Rovaio. See 458 U.S. at 867-74. Yunis

defendants the benefit of the doubt." Id. at 458.  It remains an open question whether information

that is helpful for the defense but not Brady material may still be withheld from discovery based

on the government's interest in protecting properly classified information.  See id. at 456 n.18;

United States v. Rezaq, 134 F.3d 1121, 1142 n.15 (D.C. Cir. 1998) (reserving question of whether,

once material has been identified as helpful to the defendant, courts may nevertheless still balance

"the defendant's interest in disclosure against the government's interest in secrecy").

      To be sure, ex parte proceedings are generally disfavored.  United States v. Libby, 429 F.

Supp. 2d 18, 21-22, amended by 429 F. Supp. 2d 46 (D.D.C. 2006); see also Ayestas v. Davis, 584

U.S. 28, 40-41 (2018) (explaining that "ex parte motions are disfavored, but they have their place"

and collecting cases).  However, the Court has "inherent authority" to review "sensitive materials"

ex parte in camera.  Jibril v. Mayorkas, 101 F.4th 857, 866 (D.C. Cir. 2024) (quotation omitted).

Moreover, in the CIPA section 4 context "an adversary hearing with defense knowledge would

defeat the very purpose of the discovery rules."  Mejia, 448 F.3d at 457 (quotation omitted).  Thus,

although "defendants and their counsel, who are in the best position to know whether information

would be helpful to their defense, are disadvantaged by not being permitted to see the information,"

ex parte in camera review remains permissible.  Id. at 458; see also United States v. Al-Farekh,

956 F.3d 99, 107-09 (2d Cir. 2020) (rejecting argument that district court abused its discretion in

reviewing government CIPA section 4 filing ex parte in camera).

      Here, Lemma's arguments for adversarial CIPA section 4 proceedings are foreclosed by

Mejia.  Although ex parte proceedings are disfavored and the defense is better placed than the

---

only referenced Valenzuela-Bernal for the proposition that a defendant who had awareness of the overall nature of the withheld evidence could provide "some specificity as to what benefit he expects to gain from the evidence."  Yunis, 867 F.2d at 624.  And Yunis went on to explain that it preferred the term "helpful to the defense" rather than "material[]" despite the latter's use in both Rovairo and Valenzuela-Bernal.  Id. at 625.  Clarifying Yunis, the court in Mejia reinforced that Yunis's "helpful" standard imposes a somewhat lower bar than the "material and favorable" threshold in Brady and related cases.  See Mejia, 448 F.3d at 456-58 & nn.18-20.

Court to evaluate the helpfulness of the withheld information, it would defeat the purpose of the classified-information privilege to allow the defense to see the information as part of the <u>Yunis</u> determination.  Thus, it remains appropriate to consider the government's motion and supporting materials ex parte and in camera.

Analyzing the second step of the <u>Yunis</u> inquiry first, the government has carried its burden to make a colorable assertion of privilege.[5]  The government submitted detailed declarations from officials in positions of knowledge about the reasons for withholding the documents at issue, the potential harm to national security from disclosure, and why in the government's view the information is either not discoverable or not helpful to the defense.  <u>See</u> <u>Libby</u>, 429 F. Supp. 2d at 25 (requiring the government to provide a declaration or affidavit from an intelligence community official with the requisite clearances (1) describing the reasons for classification, (2) explaining the potential national security harm from disclosure, and (3) detailing why the defense did not have a need to know the information).  Having reviewed the declarations, the Court finds that the government's assertions of privilege are far more than colorable.

---

[5] The Ninth and Second Circuits require that the government "formally assert the state-secrets privilege" and specify that the privilege must "be lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer."  <u>Alahmedalabdaloklah</u>, 94 F.4th at 811; <u>see also</u> <u>United States v. Aref</u>, 533 F.3d 72, 80 (2d Cir. 2008) (quoting <u>United States v. Reynolds</u>, 345 U.S. 1, 8 (1953)).

The Fourth and Fifth Circuits do not require such a formal assertion.  <u>United States v. Rosen</u>, 557 F.3d 192, 198 (4th Cir. 2009); <u>United States v. El-Mezain</u>, 664 F.3d 467, 521 (5th Cir. 2011).  The Fifth Circuit agreed with the Fourth Circuit that it is not clear that the requirement to formally invoke the state-secrets privilege carries over from <u>Reynolds</u>' civil context to the criminal context and emphasized that CIPA section 4 does not expressly require the Attorney General's involvement, unlike section 6, for example.  <u>El-Mezain</u>, 664 F.3d at 521-22; <u>see also</u> <u>id.</u> at 522 ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983))).  The Fifth Circuit also noted that the Second Circuit deemed failure to formally invoke the privilege to be excusable where there would be no benefit to requiring the agency to do so.  <u>Id.</u> at 522; <u>see also</u> <u>United States v. Abu-Jihaad</u>, 630 F.3d 102, 141 n.34 (2d Cir. 2010) (same).

The Court agrees with the Fourth and Fifth Circuits that the text of CIPA requires only a "sufficient showing" that the classified-information privilege applies and not a formal invocation of the state-secrets privilege by an agency head.  18 U.S.C. App. § 4; <u>see also</u> <u>United States v. Trump</u>, 701 F. Supp. 3d 1, 3 (D.D.C. 2023) (rejecting argument that affidavit by the Attorney General is required under CIPA section 4).  In any event, the basis for invoking the privilege here is so clear that there would be no benefit to requiring DOJ to make a formal invocation.

As to the first and third steps of the <u>Yunis</u> test—relevance or materiality and helpfulness to the defense—this Court finds instructive the approach taken in <u>Libby</u>. There, the court provided the defendant with an opportunity to submit an ex parte declaration or affidavit detailing the defense theory so the court would be better able to evaluate whether the defendant could still adequately pursue that theory despite the information being withheld. <u>See</u> 429 F. Supp. 2d at 26 (citing cases allowing for an ex parte in camera defense filing or hearing); <u>United States v. Trump</u>, 701 F. Supp. 3d 1, 3 (D.D.C. 2023) (describing an ex parte hearing with defense counsel as the "established procedure" following <u>Libby</u>); <u>Al-Farekh</u>, 956 F.3d at 109 (noting that the district court there met with defense counsel ex parte to hear the defendant's theory of the case and potential defenses). Indeed, it would be difficult to ascertain whether the withheld information would be relevant or material and helpful to the defense without any insight into that defense. And the government itself does not object to Lemma filing an ex parte in camera brief outlining his defense. Gov't Resp. 6.

Thus, the Court will not order adversarial CIPA section 4 proceedings but will permit the defense to file a brief and/or declaration outlining its theory of the defense to aid the Court in evaluating the helpfulness of the withheld information.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny the defendant's motion for adversarial briefing and order that defense counsel may submit a brief and/or declaration describing the proposed defense. The Court will not rule on the government's motion at this time. A separate order will accompany this opinion.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>October 3, 2025</u>